**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO.: 05-80885-CIV-RYSKAMP/VITUNAC

JANICE MURRAY,

       Plaintiff,

v.

PLAYMAKER SERVICES, LLC., a Florida
corporation, JOEL "BRILL" MAXWELL, an
individual, and WAY COOL PLAYGROUNDS,
INC.,

       Defendants.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND

## ENTRY OF FINAL JUDGMENT

_____THIS CAUSE comes before this Court upon Defendant's Motion for Summary Judgment

**[DE 21]** filed on September 25, 2006.  Plaintiff responded **[DE 42]** on October 20, 2006.

Defendant did not reply.

Plaintiff filed her own motion for Summary Judgment **[DE 27]** on September 25, 2007.

Defendant responded **[DE 36]** on October 13, 2007.  Plaintiff replied **[DE 37]** on October 19,

2007.  This Court held a hearing on the above motions on September 20, 2007.  The motions are

now ripe for adjudication.

I.      **Introduction**

This is an action for failure to provide overtime compensation required by the Fair Labor

Standards Act (FLSA).  Plaintiff also includes claims for failure to pay regular wages and breach

of contract.  This Court has jurisdiction over the matter and the venue is proper as each of the Defendants live in Palm Beach County.  Moreover, the acts complained of occurred in Palm Beach County.

Playmaker and Way Cool were engaged in the business of selling and installing outdoor playground equipment and related services.[1]  Maxwell was a supervisor within the company and is alleged to have been Plaintiff's employer.

Defendants Playmaker and Maxwell engaged Plaintiff on January 17, 2005 as a sales representative of playground equipment.  Maxwell promised Plaintiff a 30% sales commission and reimbursement for travel and office expenses.

Plaintiff was expected to create sales, mail catalogs and brochures, prepare invoices and ensure proper equipment delivery and installation.  During her time with Defendants, Plaintiff spent most of her time making sales calls and completing paperwork.  She alleges that she spent 360 hours working for Defendants and that she is entitled to a minimum wage for that time.  She alleges that she was never paid any sales commissions and that she is owed $193.07 in expenses.  She also alleges that she often worked over 40 hours per week and that Defendants never compensated her for this time.  Plaintiff ended her relationship with Defendants on March 21, 2005.

Accordingly Plaintiff sues Playmaker and Maxwell for unpaid wages in violation of 29 USC § 206 (counts I and II), unpaid overtime wages in violation of 29 USC § 207 (counts III and IV) and breach of oral contract (counts IV and VII).  Plaintiff also raises a successor liability

---

[1]It appears that Playmaker was the company for whom Plaintiff agreed to work.  At some point, Way Cool purchased or otherwise acquired Playmaker.  Plaintiff therefore brings causes of action against Way Cool as the successor corporation of Playmaker.

claim against Way Cool (Count V).

Both parties have filed motions for summary judgment. Defendants' motion argues that Plaintiff was an independent contractor or was an exempt outside employee. Defendants also argue that there was no breach of contract. Although Plaintiff responded to Defendants' motion by arguing that there are material facts in dispute,[2] Plaintiff filed her own motion for summary judgment. She argues that she is not an independent contractor or an exempt employee and has accordingly made out her claim under the FLSA.

## II.    Summary Judgment Standard

A party is entitled to judgment as a matter of law when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should be entered only when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all the evidence is viewed in the light most favorable to the nonmoving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655 (11th Cir. 1983). Summary judgment is mandated when a plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The "mere existence of a scintilla fo evidence in support of [the non-moving party's] position will be insufficient[.]" *Early v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). "If the evidence is merely

_____

[2] Although Plaintiff argues that there are material issues of fact in dispute, all of the "factual disputes" that she lists are actually issues of law. Accordingly, it is proper for this Court to determine those disagreements in a motion for summary judgment.

colorable, or is not significantly probative, summary judgment may be granted." *Id*.

In considering a motion for summary judgment, the Court must construe all facts and draw all reasonable inferences in favor of the non-moving party. *HCA Health Services of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). The non-moving party bears the burden of coming forward with evidence of each essential element of their claims, such that a reasonable jury could find in his favor. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). The failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322.

## III.    Discussion

**Independent Contractor Status**

Subject to a number of exceptions, the FLSA requires certain employers to pay its employees time and one-half for any hours worked over forty hours per week. 29 U.S.C. § 207(a)(1). In this motion, Defendant argues that Plaintiff was an exempt employee and therefore is not eligible to collect overtime wages.

The FLSA does not apply to independent contractors. Courts must therefore determine whether one is, as a matter of economic reality, an employee who is afforded the protections of the FLSA, or an independent contractor, who is not. *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947). Courts look to a number of different factors to make this determination: (1) the nature and extent of the employer's control over the manner in which the work was to be preformed; (2) the extent that the employee could control his profit or loss based upon his skill level; (3) the employee's investment in equipment, materials, or his employ of other employees to

complete the job; (4) whether a special skill is required to complete the job; (5) the degree of

permanency and duration of the working relationship;(6) how integral the employee's job is to

the employer's business; and most significantly, (7) whether the employee is economically

dependent on the employment.  *Freund v. Hi-Tech Satellite, Inc.*, 185 Fed.Appx. 782, 783 (11th

Cir. 2006).  These factors are a guide; the existence of any one factor is not determinative.  As

such, these factors allow the "economic reality rather than the 'technical concepts' to be the test

of employment[.]" *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961).

When considered together, the facts show that Plaintiff was indeed an independent

contractor.  Both parties agree to the following facts; to the extent that the parties disagree about a

particular non-material fact, the following recites all facts in the light most favorable to Plaintiff.[3]

Plaintiff heard about Defendants through Maria Paz, another of Defendants' salesperson.

On January 17, 2005, it appears that Plaintiff spoke with Maxwell regarding whether she might be

considered as a salesperson for his company to sell playground and related equipment and its

installation.  Plaintiff completed a job application and entered into an oral contract.  This contract

provided that Plaintiff would receive 30% of the net profit from any completed sale as her

commission.  The commission rate was the only compensation that Plaintiff was to receive.  It also

---

[3]Plaintiff submitted her affidavit in support of her Motion for Summary Judgement **[DE 25]**.  Defendants argue that this affidavit contradicts previous deposition testimony and this Court agrees.  This Court also agrees that the statement made in the affidavit are intended to create issues of material fact.  Accordingly, where a subsequent affidavit is inconsistent with a prior unambiguous deposition the Court may disregard the affidavit. *Holley Equip. Co. V. Credit Alliance Corp.*, 821 F.2d 1531, 1537 (11th Cir. 1987)(Court found no inconsistency where deponent was correcting his prior testimony).  Here, Plaintiff testified in her deposition, for example, that she worked as a nurse until, at least, the last two weeks of March.  In the affidavit, however, she states that she quit working as a nurse only three weeks after starting to 'work" with Defendants.  This is but one example of the inherent inconsistencies contained in the affidavit.  Thus, this Court will not consider Plaintiff's affidavit when deciding this motion.

appears that she was supposed to be reimbursed for certain expenses such as gas.

Maxwell required that Plaintiff create a corporate entity through which she conducted her sales. By February 11, 2005 the Florida Secretary of State had accepted her incorporation papers for Jaska Enterprises, Inc. About two weeks later, Plaintiff was the functioning president of Jaska Enterprises, Inc.

To assist Plaintiff, Maxwell gave her product catalogues, a cell phone, a voice mailbox, an e-mail address and business cards that listed her as a sales representative. She had access to a shared computer and desk area in Defendants' office space. She was also given access to a product pricing software program, which calculated the prices for most of the equipment. While the salesperson could adjust the price marginally, the prices were relatively firm. Maxwell would provide her with customer leads when available and in return requested that she contact the potential customer quickly.

As far as training, another sales representative, Tracey Gill, explained how to use the pricing software program. Gill also had one or two business phone conversations with Plaintiff. Plaintiff also attended some sales calls with Maria Paz and had contact with Maxwell through e-mail and phone conversations. It appears that Maxwell provided little to no actual hands-on training, as the communication between Maxwell and Plaintiff tended to be administrative rather than educational.

Plaintiff conducted most of her business activities from her home and on her own time. She used her own car. Her hours were typically organized around her customer's availability. There was no minimum or maximum number of hours or days per week that she was expected to work. Although the record is unclear on exactly how often Plaintiff went to Defendants' office

space, it appears that she visited the office at least twice a week.  Although Maxwell and Plaintiff

kept in contact with one another, Maxwell did not directly oversee Plaintiff's activities.  The

relationship was described as Plaintiff "doing her own thing."

Plaintiff did court potential customers, specifically Community Christian Church (CCC).

CCC was looking to purchase playground equipment.  Plaintiff met with the CCC, gave

presentations, and gave them a price for the requested services.  It appeared that Plaintiff's efforts

with CCC would result in a sale.

Just before the sale was completed, however, Plaintiff decided to stop providing services

for Defendants as evidenced in her resignation letter of March 20, 2005, where she signed the

letter as President of Jaska Enterprises.  In response, Maxwell wrote an e-mail directing Plaintiff

to give Maria Paz any of her work related materials and to not attend the next scheduled meeting

with CCC.  It was at that meeting where the CCC sale would have been completed.

It is also important to note that during Plaintiff's relationship with Defendants, she also

worked as a per diem nurse for a local hospital.[4]  Plaintiff admitted that the only income that she

received from January to March 2005 was from her nursing job.  She then stated in her deposition

testimony that she was economically dependent on her nursing job.

The above facts taken as a whole indicate that Plaintiff was an independent contractor.

First, Plaintiff had nearly complete control over the manner in which the work was to be

preformed.  She set her hours, decided who to cold call, decided when and where to arrange

---

[4]Although Plaintiff's deposition testimony indicates that she worked as a nurse the entire time she acted as a sales representative for Defendants, there are points in her deposition testimony where she stated that she did not work as a nurse for the last two weeks in March 2005.

meetings, she could even structure her time around her job as a nurse.  The only seeming

restriction was that when Maxwell provided her with a customer lead, she was to follow up on

that lead as soon as possible.

Second, Plaintiff had complete control over her potential for profit or loss.  Her pay was

exclusively commission based.  As such, it was primarily up to her to "pound the pavement" to

solicit customers and to cultivate clients.

Third, the investment in materials to complete the job was minimal for both Plaintiff and

Defendants.  Plaintiff had a car payment with insurance and worked out of her home so she had to

pay rent.  Likewise, Defendant invested in a cell phone, catalogues, and business cards.

Defendant's expenditures were minimal in price just like Plaintiff's.  Although the total amount of

money that Plaintiff spent on materials may have been higher, she would have incurred these

expenses regardless of her relationship with Defendants.  Thus, the Court considers this factor to

be neutral.

Fourth, it appears that there was little skill need to sell playground equipment as evidenced

by the fact that Plaintiff had no prior experience in sales and that she had little to no formal

training on how to sell.  The training that she did receive focused more on the administrative

particulars of Defendants' business rather than focusing on skills need to effectively sell the

equipment.

Fifth, there was no permanency to this relationship.  As Plaintiff testified, she was able to

stop the relationship when she pleased, and did so in March 2005.

Sixth, Plaintiff's responsibilities were marginally integral to Defendants' business.  If

viewed as a group, the sales representatives were extremely important to Defendants' business as

they were the individuals brining in nearly all of Defendants' business.  But that is only when viewed as a group.  When viewed individually, Plaintiff was not integral to Defendant' business as she produced only one sale and only worked with Defendants less than a year.

Seventh, and most importantly, Plaintiff was not economically dependent on income from Defendants.  She kept her job as a nurse, earning over $40.00 per hour, through her time with Defendants.  Even considering Plaintiffs's inconsistent deposition testimony, she at the very least worked as a nurse until the last two weeks of March 2005.  Regardless, Plaintiff admitted in her deposition that she was economically dependent not on Defendants, but rather on her job as a nurse.  This must be true since she received pay as a nurse but never received pay from Defendants.

Thus, when viewed in total, Plaintiff was an independent contractor and is therefore not entitled to recovery under the FLSA.

**Breach of Contract**

Thus, this leaves the breach of contract claim.  To prevail on a breach of contract claim, Plaintiff must show the existence of a valid contract, breach of the contract, and damages.  *Barbara G. Banks, P.A. v Thomas D. Lardin, P.A.*, 938 So.2d 571, 575 (Fla. 4th DCA 2006).  For an oral contract, Plaintiff must also allege facts, that if true, show that the parties mutually reached a clear and definite agreement and left no essential terms open.  *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So.2d 297, 300 (Fla. 1st DCA 1999).

This dispute centers around whether Defendants breached the oral contract by failing to pay Plaintiff a commissions for her work with CCC.  It appears that the parties agreed that Plaintiff would be owed her commission upon the completion of a sale.  Thus, the issue here is

when a sale becomes complete.

There is disagreement in the record concerning what the parties agreed would constitute a completed sale.  Some of the record testimony indicates that the sale was complete upon the customer's payment, but other testimony indicates that the sale was considered complete once the equipment had been installed.  When viewed in the light most favorable to Plaintiff, the evidence shows that the earliest point at which Plaintiff could have been deemed to have completed a sale under the contract, was when a customer remitted payment.

The facts show that Plaintiff chose to end her relationship with Defendants before CCC remitted payment.  The Eleventh Circuit has held that breach of contract actions cannot be maintained in instances where an individual would be owed future commissions based on a completed sale, but where that person terminates her relationship before completing the sale. *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1177-78 (11th Cir. 2002).

Aside from the original contract discussed above, there is a dispute regarding a possible modification of the contract regarding payment.  When Plaintiff first indicated to Maxwell that she intended to resign, he offered her three choices, complete the sale herself, give the sale to Maria Paz and split the commissions, or "just move on."  In response, Plaintiff stated that Maxwell was to clarify with Maria Paz regarding her availability to assume the CCC account.  She also stated "I would further request something in writing which says I no longer work for Playmaker Services.  Thank You (*sic*) again and be well."   Again in response, Maxwell offered the same three scenarios to Plaintiff: she could finish the job, hand it off to Paz and split the commission or she could simply leave the company.  In response, Plaintiff wrote a letter as President of Jaska Enterprises terminating her relationship with Defendants.

In any contract or contract modification, there must be an offer and acceptance.  Here, although there was an offer, Plaintiff never accepted the offer for full or partial payment.  Thus, there is no breach of contract.

**III.    Conclusion**

Accordingly, it is hereby,

ORDERED AND ADJUDGED that:

(1)    Defendant's Motion for Summary Judgment **[DE 21]** is GRANTED;

(2)    Plaintiff's Motion for Summary Judgement **[DE ]** is DENIED;

(3)    Final Judgment is hereby entered for the Defendants and against the Plaintiff; and

(4)    The Clerk's Office is directed to CLOSE this case and deny any pending motions as moot.

DONE AND ORDERED in Chambers at West Palm Beach, Florida, this 24 day of September, 2007.

_____
        /s/ Kenneth L. Ryskamp
        KENNETH L. RYSKAMP
        UNITED STATES DISTRICT JUDGE

Copies provided:
All counsel of record