UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-80885-CIV-RYSKAMP/VITUNAC

JANICE MURRAY,

      Plaintiff,

v.

PLAYMAKER SERVICES, LLC., a Florida
corporation, JOEL "BRILL" MAXWELL, an
individual, and WAY COOL PLAYGROUNDS,
INC.,

      Defendants.

_____/

## DEFENDANTS' VERIFIED MOTION FOR ATTORNEY'S FEES AGAINST PLAINTIFF AND CATHLEEN SCOTT, P.A., AND INCORPORATED MEMORANDUM OF LAW

Defendants, Playmaker Services, L.L.C., a Florida corporation, Joel "Brill" Maxwell, an individual, and Way Cool Playgrounds, Inc. ("Defendants"), through their Counsel ("Defendants"), pursuant to Local Rule 7.3, *Florida Statutes* § 448.08, 28 U.S.C. § 1927, and this Court's Final Order entered on September 25, 2007 and on this Court's Final Judgment entered on October 22, 2007, move this Court for entry of an order awarding attorney's fees against Plaintiff and against Cathleen Scott, P.A.,[1] and in support state:

### BACKGROUND

The Plaintiff filed a Complaint setting forth seven (7) substantive counts pursuant to §§ 206 and 207 of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, for failure to pay minimum wage, overtime, and unpaid wages (Counts I-IV), a count for successor liability against Defendant Way Cool Playgrounds, Inc. (Count V), and two counts for breach of oral contract (against Playmaker Services, L.L.C. and Maxwell (Counts VI and VII), for which Plaintiff also sought attorneys fees pursuant to *Florida Statutes* § 448.08. Plaintiff sought back

wages, liquidated damages, prejudgment interest, attorneys' fees, litigation expenses, and to be reimbursed for $256.98 for alleged unreimbursed expenses. (*See generally, Complaint*).

On September 25, 2007, this Court issued an Order Granting Defendants' Motion for Summary Judgment and Entry of Final Judgment against the Plaintiff on all counts of the Complaint. This Order requires the conclusion that the Defendants are the prevailing parties in this case both in general, *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dep't of Health and Human Res.*, 532 U.S. 598, 603-04 (2001) (holding that a party is considered to have prevailed when a court has rendered judgment or where a court has materially altered the legal relationship of the parties), and specifically under *Florida Statutes* § 448.08. *Sentinel Enterprises, Inc. v. Stankiewicz*, 545 So. 2d 288 (Fla. 3d DCA 1989) (holding that defendant which obtained summary judgment as to the plaintiff's § 448.08 claim was a prevailing party entitled to attorneys fees). The Supreme Court of the United States has held that a judgment renders a party to be a prevailing party. *Farrar v. Hobby*, 506 U.S. 103, 111-13 (1992) (holding that a judgment renders a party to be a prevailing party). Unquestionably, the Defendants are the prevailing parties.

## MEMORANDUM OF LAW

### I.  THE APPLICABLE LEGAL STANDARDS FOR DETERMINING ATTORNEY'S FEE AWARDS

#### A.  Against the Plaintiff

Under *Florida Statutes* § 448.08, "[t]he court may award to a prevailing party in an action for unpaid wages costs of the action and a reasonable attorney's fee." There is no dispute that the Plaintiff brought a claim under § 448.08, because in several counts of the Complaint, she seeks attorneys' fees pursuant to that statute. As quoted from the statute, § 448.08 makes no distinction between prevailing plaintiffs and prevailing defendants, and Florida courts have explicitly rejected the suggestion that prevailing defendants have a heightened standard for recovery of fees and costs under § 448.08. *Sentinel Enterprises, Inc. v. Stankiewicz*, 545 So. 2d 288 (Fla. 3d DCA 1989) (holding that defendant which obtained summary judgment as to the plaintiff's § 448.08 claim was a prevailing party entitled to attorneys fees, just like a prevailing plaintiff would be so entitled); *New World Communications of Tampa, Inc. v. Akre*, 866 So. 2d

---

[1] Defendants do not request that a hearing be held on this Motion. This Motion only covers up to October 22, 2007, because that is the date that this motion is filed. Plaintiffs intend to file supplemental motions

1231, 1235-36 (Fla. 2d DCA 2004) (holding so for *Florida Statutes* § 448.104 which has a similar provision concerning that a prevailing party is entitled to fees). When a statute gives a court discretion to award attorneys' fees to a prevailing party, "there is no precise rule or formula for making these determinations [whether and how much fees should be awarded],' but instead equitable discretion should be exercised . . . .'" *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)).

In this case, the Court should exercise its discretion and award attorneys fees in the Defendants' favor against the Plaintiff. This is a case in which found that the Plaintiff was an independent contractor, as a matter of law. (*Order on Summary Judgment* at 7-9). The Court found that of the seven (7) factors utilized in the economic realities test, six (6) of the factors weighed in favor of the Defendants, and one (1) was neutral. *Id.* Further, as the Court noted, the Plaintiff specifically admitted that she was not economically dependent upon the Defendants for her livelihood since she had a job as a nurse, as follows:

> It is also important to note that during Plaintiff's relationship with Defendants, she also worked as a per diem nurse for a local hospital. Plaintiff admitted that the only income that she received from January to March 2005 was from her nursing job. She then stated in her deposition testimony that she was economically dependent on her nursing job.

*Id.* at 7 (footnote omitted). At the oral argument on the summary judgment motions, the Court noted that this was the strongest case concerning concluding that the plaintiff was an independent contractor that the Court had ever seen in its career, and the Court stated that the Plaintiff's case was frivolous, as follows:

> The Court: If this isn't a situation for an independent contractor, I don't know what one is.
>
> *            *            *
>
> [After Plaintiff's counsel argued that if she were to be found to be an employee, she was not exempt under the outside sales exemption, which is a point that Plaintiff's counsel wanted the Court to note, the Court stated]
>
> The Court: It may be a point in your mind, but, frankly, I think your whole claim is frivolous. I have never seen a more strong case for being an independent contractor.

---

for attorneys fees at appropriate times in the case as further work necessitates.

(*Oral Argument Transcript* at 13, 16).  It is not known how or why this case was filed.  Either Plaintiff's counsel filed it without sufficiently communicating with her client to determine that in fact the case had no basis, or Plaintiff's counsel filed the case anyway, hoping that the Defendants would settle rather than spend the time and effort obtaining summary judgment. Either way, the fact that this case was filed, despite its facts, which overwhelmingly show that the Plaintiff was an independent contractor, warrant that the Court exercise its discretion to award fees to the Defendants under *Florida Statutes* § 448.08, since the Defendants are prevailing parties.  Numerous courts have exercised their discretion to award fees to a prevailing defendant under § 448.08.  *Sentinel Enterprises, Inc. v. Stankiewicz*, 545 So. 2d 288 (Fla. 3d DCA 1989); *McGregor v. Board of County Comm'rs for Palm Beach County*, 130 F.R.D. 464 (S.D. Fla. 1990).

Additionally, the Court should note that even if Plaintiff was an employee (for purposes of the fair employment statutes) the Plaintiff was clearly exempt under the outside sales exemption.  The FLSA exempts from §§ 206's and 207's minimum wage and overtime requirements respectively with respect to employees employed as outside salespeople.  29 U.S.C. § 213(a)(1) ("any employee employed . . . in the capacity of outside salesman" is exempt); *Jewel Tea Co. v. Williams,* 118 F.2d 202, 208 (10th Cir. 1941); *Nielsen v. Devry, Inc.*, 302 F. Supp. 2d 747 (W.D. Mich. 2003).  The outside sales exemption derives from the incompatibility of minimum wage requirements with the individual character of the work of such salespersons.  *Jewel Tea Co. v. Williams,* 118 F.2d 202, 208 (10th Cir. 1941).  Exemptions to the FLSA are construed narrowly, and the employer bears the burden of demonstrating that an employee is exempt.  *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974) (employer must prove application of FLSA exemption).

The term "outside salesman" is defined in 29 C.F.R. § 541.500 to mean the following:

(a) The term 'employee employed in the capacity of outside salesman' in section 13(a)(1) of the Act shall mean any employee:

(1) Whose primary duty is:

(i) making sales within the meaning of section 3(k) of the Act, or

(ii) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and

(2) Who is customarily and regularly engaged away from the employer's place or places of business in performing such primary duty.

(b) The term 'primary duty' is defined at § 541.700. In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee's own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee's sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee's sales or display catalogue, planning itineraries and attending sales conferences.

29 C.F.R. § 541.500 (2004).

### A.     The Plaintiff Was Clearly Making Sales for Purposes of § 3(k)

The FLSA defines "sale" as "any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition." 29 U.S.C. § 203(k). The Regulations discuss in greater detail the meaning of "making sales or obtaining orders":

(a) Section 541.500 requires that the employee be engaged in:

(1) Making sales within the meaning of section 3(k) of the Act, or

(2) obtaining orders or contracts for services or for the use of facilities.

(b) Sales within the meaning of section 3(k) of the Act include the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property. Section 3(k) of the Act states that "sale" or "sell" includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.

29 C.F.R. § 541.501 (2004).

Courts have articulated various factors probative of an employee's status as an outside salesperson, including whether the employee:  must solicit new business; receive specialized sales training; was hired and denominated as a salesperson; whether the salesperson is paid by commissions; whether the employee decides her own work schedule and the number of hours to be devoted to serving her sales territory; whether the employer monitors, direct, or supervises the employee; and whether the position was advertised as a salesperson. *Nielsen v. Devry, Inc.*, 302 F. Supp. 2d 747, 756 (W.D. Mich. 2003); *Fields v. AOL Time Warner, Inc.*, 261 F. Supp. 2d 971, 974 (W.D. Tenn. 2003) (citations omitted); *McLaughlin v. Murphy*, 2005 WL 1787883, *3 (D.

Md. 2005).   In deciding whether an employee is an outside salesperson, the Court should look beyond labels and descriptions and also inquire into the particular facts of the actual work performed. *See, e.g., Ale v. Tenn. Valley Auth.,* 269 F.3d 680, 688-89 (6th Cir.2001); *Fields,* 261 F. Supp. 2d at 975.   None of the indicia of sales-relatedness can be considered in isolation. Instead, the Court is to consider the totality of the circumstances in a task-related context. *See Hodgson v. Krispy Kreme Doughnut Co.,* 346 F. Supp. 1102, 1103 (M.D. N.C. 1972).   What follows is an application of the aforementioned factors to the present case.

### Plaintiff Approached Maxwell to Form a Relationship Based on Sales

An employee is more likely to be considered engaged in sales if the job was advertised as a sales position and the employee was recruited based on sales experience and abilities.   *See, e.g., Krispy Kreme,* 346 F. Supp. at 1106; *Jewel Tea,* 118 F.2d at 208.   Plaintiff approached Maxwell about becoming a sales representative for his company, because her friend, Maria Paz, who was already subcontracting with Maxwell, informed her about the relationship.   (Facts ¶ 4).[2] The opportunity was clearly referred to as sales-related, and Plaintiff's business card identified her as a sales representative.   (Facts ¶¶ 4, 6).   Plaintiff did not, however, have sales experience. Accordingly, this factor weighs in favor of Defendants.

### Plaintiff Received Some Specialized Training

Specialized sales training is another factor indicative of whether an employee is engaged in sales. *See Fields,* 261 F. Supp. 2d at 975 (employees "received sales training in products and techniques"); *Krispy Kreme,* 346 F. Supp. at 1106 (employees underwent training program including reviewing the products to be sold; production and quality standards and methods; handling of the product; servicing of established customers; and training in increasing sales to established customers and gaining new business).   In this case, Plaintiff did undergo some specialized training at the inception of the relationship.   (Facts ¶¶ 53, 11, 9).   The type of training that Plaintiff received is similar to the types of training that the outside salespersons received in *Fields* and *Krispy Kreme,* and therefore this factor weighs in favor of Defendants.

### The Agreement Was that Plaintiff Was To Be Paid Straight Commission for a Completed Sale

An employee's compensation structure is another factor relevant to the determination of whether the employee is engaged in sales.   Compensation based wholly or in significant part on

---

[2] All citations to "(Facts ¶ ___)", refers to the Defendants' Statement of Material Facts filed in support of their Motion for Summary Judgment.

commissions correlates with a finding that the employee does sales work. *See, e.g.*, *Fields*, 261 F. Supp. 2d at 975 (stating that "the majority of Plaintiffs' compensation came from sales commissions"); *Krispy Kreme,* 346 F. Supp. at 1104-05.   However, the FLSA and DOL regulations do not require that an employee be paid a commission in order to be exempt as an outside salesperson.   In fact, there is no compensation level or type requirement for the outside sales exemption.   Salaried employees who received modest commission, incentives, or performance-based rewards have been found to be salespersons. *See, e.g.*, *Hodgson v. Greene's Propane Gas Serv., Inc.,* 64 Lab. Cas. ¶ 32, 455, 1971 WL 692 at *7 n. 8 (M.D. Ga. Feb. 16, 1971) (employees found to be salespersons typically earned commissions ranging from 17% to 32% of their total salaries).

In this case, the agreement between Maxwell and Plaintiff was that Plaintiff's compensation would be straight commission.   (Facts ¶¶ 44, 8).   While Plaintiff believes the commission was supposed to have been 8% of the net profit (Facts ¶ 8), Maxwell testified (such testimony is not included in the Statement of Facts, because it is largely irrelevant) that the commissions were to be 30% of the net profit.   In any event, it is clear that the agreement was for any compensation paid to Plaintiff's company to have been in the form of a straight commission. (Facts ¶ 44).   Moreover, the agreement was that Plaintiff was not to be paid until Maxwell had possession of the check for the playground equipment.   (Facts ¶ 20).   The fact that Plaintiff's compensation was in the form of straight commission requires the conclusion that his factor weigh in favor of Defendants.

### Plaintiff Independently Solicited New Business

Independently soliciting new business is another indicator of sales activities. *Fields*, 261 F. Supp. 2d at 975.  Plaintiff admits that at first 50% of her leads were self-generated through her own efforts.  (Facts ¶ 47).  She then testified that she actually received minimal leads from the Defendants.   (Facts ¶ 47).   Plaintiff clearly admitted to cold-calling prospective customers (people and institutions) (Facts ¶ 47), and therefore this factor weighs in favor of Defendants.   It is hard for Plaintiff to deny that she was not in sales, when Plaintiff was scouring Florida looking for leads.  Thus, this factor weighs in favor of the Defendants.

### Plaintiff Determined Her Work Schedule and the Number of Hours that She Devoted to Selling

Whether the employee decides his own work schedule and the number of hours to be devoted to serving her sales territory, is another factor.  *McLaughlin v. Murphy*, 2005 WL

1787883, *3 (D. Md. 2005).  In this case, Plaintiff was completely free to schedule her own appointments whenever she wanted to, and such scheduling revolved around the mutual schedules of Plaintiff and the customer.  (Facts ¶¶ 52, 34, 35).

**Plaintiff Was Not Monitored, Directed, or Supervised**

Whether the employer monitors, direct, or supervises the employee is the final factor. *McLaughlin v. Murphy*, 2005 WL 1787883, *3 (D. Md. 2005).  Plaintiff admitted that she was free from direct contact or supervision.  (Facts ¶¶ 11, 34, 57).

Plaintiff's activities comprised "making sales" or "obtaining orders or contracts for services" (Facts ¶ 45), as set forth in 29 C.F.R. § 541.501(a).  In any event, upon application of the above factors, it is clear that even if Plaintiff is found to be an employee of any of the Defendants (which she was not), she clearly was an exempt outside salesperson.  Some examples from the regulations suggest that an employee is involved in exempt sales activities if he consummates a sale, directs his activities toward consummating a sale that he himself makes, or obtains orders or commitments from a purchaser.  29 C.F.R. § 541.504(b)(2).  In borderline cases the test is whether the person is actually engaged in activities directed toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling.  *Id.*  If his efforts are directed toward stimulating the sales of his company generally rather than the consummation of his own specific sales his activities are not exempt. *Id.*

Therefore, the first element of the test for determining whether an individual is an outside salesperson (whether the individual is making sales) is clearly established by Defendants.

**B.     The Plaintiff's Work Was Outside**

The second element of the "outside sales" exemption requires Defendants to prove that Plaintiff "customarily and regularly" made sales "away from" Defendants' place of business. 29 C.F.R. § 541.500.   The regulations describe the meaning of "outside" or "away from his employer's place of business" as follows:

> An outside salesman be customarily and regularly engaged 'away from his employer's place or places of business.'  This requirement is based on the obvious connotation of the word 'outside' in the term 'outside salesman.'  The outside sales employee is one who makes sales at the customer's place of business or, if selling door-to-door, at the customer's home.  Outside sales does not include sales made by mail, telephone or the Internet unless such contact is used merely as an adjunct to personal calls.  Thus, any fixed site, whether

> home or office, used by a salesperson as a headquarters or for telephonic
> solicitation of sales is considered one of the employer's places of business,
> even though the employer is not in any forma sense the owner or tenant of the
> property.  However, an outside sales employee does not lose the exemption by
> displaying samples in hotel sample rooms during trips from city to city; these
> sample rooms should not be considered as the employer's places of business.
> Similarly, an outside sales employee does not lose the exemption by displaying
> the employer's products at a trade show.  If selling actually occurs, rather than
> just sales promotion, trade shows of short duration (*i.e.*, one or two weeks)
> should not be considered as the employer's place of business.

29 C.F.R. § 541.502 (2004).

It is clear from this regulation that when the Plaintiff was at the customer's place of business (the products are designed for commercial and not residential applications), and even when the Plaintiff was following up with the customers at home (via fax or e-mail or phone), she was "away from the [Defendants'] place of business" and therefore "outside" for purposes of the regulation.  There can be little doubt that the Plaintiff, if she is determined to be an employee, is exempt under the outside salesperson exemption.

The Plaintiff clearly was customarily and regularly making sales away from Defendants' place of business.  (Facts ¶¶ 48-51).  The record reflects that Plaintiff came to Maxwell's Delray Beach office 1-2 times per week, during the time the time of the relationship.  (Facts ¶ 48).  Further, Plaintiff contacted Maxwell by telephone approximately 1-2 times per week, during the time of the relationship.  (Facts ¶ 48).  Plaintiff alleged that she spent approximately 40 hours per week trying to sell the playground equipment.  (*Complaint* ¶¶ 26-27) (indicating that she worked 8 weeks for which she could recover, and alleging that the total number of hours that she worked without compensation was 360).  However, she testified in her deposition that she worked approximately 8 hours per day when she first started, and approximately 12 hours per day near the end of the relationship.  (Facts ¶ 51).  Plaintiff does not remember how many days per week she worked (Facts ¶ 51), but given the allegations in the Complaint, Plaintiff apparently was only working 2-4 days per week.  Plaintiff testified that she made four in-person visits with customers each day, and then changed that to six such visits.  (Facts ¶ 50).  Plaintiff spent two-to-three hours on average with each visit.  (Facts ¶ 50).  Therefore, Plaintiff spent either 10 hours per day (4 visits x 2½ hrs/visit = 10 hrs) or 15 hours per day (6 visits x 2½ hrs/visit = 15 hrs) on location conducting in-person visits.  There is considerable testimony concerning what Plaintiff did at such visits.  (Facts ¶¶ 54-55).  Therefore, *it appears that Plaintiff spent almost all of her time*

*"outside"*.  Plaintiff did testify that she might make incidental phone calls or send e-mails to customers.  (Facts ¶ 56).  Accordingly, Plaintiff clearly was customarily and regularly away from Defendants office.  The foregoing shows that even if the Plaintiff were an employee, she was clearly exempt as an outside salesperson.

Finally, the breach of contract claim was also frivolous, as the Plaintiff and Defendants had an agreement that Plaintiff would not be paid until the customer remitted payment, but the Plaintiff quit before the customer remitted payment.  The Court found as follows:

> [t]he parties agreed that Plaintiff would be owed her commission upon the completion of a sale. . . .  When viewed in the light most favorable to Plaintiff, the evidence shows that the earliest point at which Plaintiff could have been deemed to have completed a sale under the contract, was when a customer remitted payment.
>
> The facts show that Plaintiff chose to end her relationship with Defendants before CCC [the customer at issue] remitted payment.  The Eleventh Circuit has held that breach of contract actions cannot be maintained in instances where an individual would be owed future commissions based on a completed sale, but where that person terminates her relationship before completing the sale.  *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1177-78 (11th Cir. 2003).

(*Order Granting Summary Judgment* at 9-10).  Despite this clear opinion on this issue from the Eleventh Circuit, the Plaintiff chose to bring a breach of contract claim anyway.  This was a particularly poor choice on her and her counsel's part, and warrants that the Court exercise its discretion to award fees in favor of the Defendants against the Plaintiff.

## B.    Against Cathleen Scott, P.A.

In addition to an award of attorneys fees against the Plaintiff, the Defendants seek an award of attorneys fees against Plaintiff's counsel's law firm, Cathleen Scott, P.A.  While the Defendants acknowledge that fees against counsel may not be awarded pursuant to the Court exercising its discretion under *Florida Statutes* § 448.08, nevertheless, the Court may award fees against Plaintiff's counsel pursuant to 28 U.S.C. § 1927.  Title 28 U.S.C. § 1927 states as follows:

> An attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Before conduct can be considered to be "unreasonable and vexatious", the party moving for fees must demonstrate "bad faith" on the part of opposing counsel. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992) (holding that not all unreasonable behavior is vexatious, and that demonstrating that conduct was indeed "vexatious" requires a showing of bad faith). Bad faith can be demonstrated by showing "ill will or reckless conduct", *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987), or subjective evidence of "malice." *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). Other courts have held that the bad faith requirement can be demonstrated by showing an "improper motive" on the part of the non-moving party. *Travelers Ins. Co. v. St. Jude Hosp. of Kenner, La., Inc.*, 38 F.3d 1414, 1417 (5th Cir. 1994). Courts must take care not to engage in *post hoc* analysis of a case; in other words, a court must not infer bad faith because a plaintiff did not prevail. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421-22 (1978).

In this case, it is particularly troubling that Plaintiff's counsel submitted an affidavit from the Plaintiff that contradicted significant areas of Plaintiff's previously provided deposition testimony, as noted by the Court in its Order Granting Summary Judgment. (*Order Granting Summary Judgment* at 5 n.3). For example, in the affidavit, Plaintiff testified that she was economically dependent upon the Defendants for her livelihood, while in her deposition, she testified, as set forth above, that she could not have been, given that she worked as a nurse earning approximately $1,500.00 per week during most or all of the time that she allegedly was trying to sell the Defendants' products. Had Plaintiff's counsel simply discussed the facts of the case with her client, she certainly would have known that this was not a case that should have been filed. The failure to have such a discussion was reckless, which requires that fees under § 1927 be awarded. *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987). Or, if Plaintiff's counsel did have that discussion with the Plaintiff, then Plaintiff's counsel brought the case and/or continued to litigate it even though she knew that it was devoid of merit. In section § I.A. *supra*, the Defendants set forth the Court's viewpoint concerning the complete lack of merit of this case. The Defendants submit that those observations warrant a finding that Plaintiff's counsel either brought this case in bad faith or continued to litigate it when she plainly knew that to be the case. Accordingly, the Defendants request that the Court award them their attorney fees in this case against Plaintiff's counsel.

**C.**   **The Eleventh Circuit's Standards for Assessing Attorney's Fees**

The Eleventh Circuit's current standards for measuring attorney's fees are set out in *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1298-99 (11th Cir. 1988) (*en banc*), wherein the court surveyed the fee-award jurisprudence of both the Supreme Court and the Eleventh Circuit, and reiterated that a fee award should be based upon a multiplication of a reasonably hourly rate (that is, "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation"), *id.* at 1299, by the number of "reasonable hours" billed, *id.* at 1301, which equals the "lodestar", and this resulting lodestar can be increased or decreased for the results obtained, the quality of representation, and for any delay in payment. *Id.* at 1302. Put another way:

(reasonable hourly rate) x (reasonable hours billed) = lodestar.

The lodestar can then be adjusted. This "lodestar" method effectively replaces the balancing effect that was previously prescribed by *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 117-19 (5th Cir. 1974), which was known as the twelve (12) *Johnson* factors.[3] However, the twelve *Johnson* factors still "might be considered in terms of their influence on the lodestar amount." *Norman*, 836 F.2d at 1299. The next four subsections discuss: 1) the reasonable hourly rate; 2) assessing the hours billed; 3) the lodestar; and 4) adjusting the lodestar, in turn.

**1.**   **Establishing A Reasonable Hourly Rate**

The "going rate" in the legal community is the most critical factor in determining a reasonable fee. *Martin v. University of South Alabama*, 911 F.2d 604, 610 (11th Cir. 1990). The pertinent "legal community" used to base an applicable hourly rate is the city where the plaintiff's

---

[3] The twelve *Johnson* factors, as summarized in *Dowdell v. City of Apopka*, 698 F.2d 1181, 1187 n.8 (11th Cir. 1983), are:

|     |     |
| --- | --- |
| a. | the time and labor required; |
| b. | the novelty and difficulty of the questions; |
| c. | the skill requisite to perform the legal service properly; |
| d. | the preclusion of other employment by the attorney due to the acceptance of the case; |
| e. | the customary fee; |
| f. | whether the fee is fixed or contingent; |
| g. | time limitations imposed by the client or other circumstances; |
| h. | the amount involved and the results obtained; |
| i. | the experience, reputation, and ability of the attorney; |
| j. | the "undesirability" of the case; |
| k. | the nature and length of the professional relationship with the client; and |

attorney has his office, not where the case was tried. *Brooks v. Georgia State Bd. of Elections*, 997 F.2d 857, 868-69 (11th Cir. 1993). The plaintiff's attorney bears the burden of producing satisfactory evidence that the requested rate is in line with the going rate. *Norman*, 836 F.2d at 1299. Satisfactory evidence is more than the affidavit of the plaintiff's attorney, and such evidence should pertain to rates actually billed and paid in similar suits. *Id.* "Evidence of rates may be adduced through direct evidence of charges by lawyers under similar circumstances or by opinion evidence." *Id.* The weight to be given to opinion evidence is affected by the detail contained in the testimony on matters such as similarity of skill, reputation, experience, similarity of case and client, and breadth of the sample of which the expert has knowledge. *Id.*

The client is undersigned counsel's client, and undersigned counsel intended to do the work on the file himself, and actually did perform the vast amount of work for which fees are sought. During most of this litigation, undersigned counsel charged $250.00 per hour (he has recently increased his rate to $275.00 per hour). Work was performed on the file by Harry O. Boreth, Esq., Chris Kleppin, Esq., and Barry G. Feingold, Esq., again with vast majority of the work being performed by undersigned counsel. Mr. Boreth has recently been awarded $450.00 per hour, and undersigned counsel has previously been awarded a rate of $270.00 per hour in a FLSA case. *See James v. Wash Depot Holdings, Inc.*, 489 F. Supp. 2d 1341 (S.D. Fla. 2007); (*Affidavit of Chris Kleppin*, attached hereto as Exhibit 1). Mr. Boreth has decades of experience, as Mr. Boreth began his legal career in the mid-1960s. Barry Feingold has been practicing in Florida for approximately ten (10) years. The retainer agreement signed by the client allows for counsel to charge $250.00 per hour, although undersigned counsel currently charges $275.00 for his services to private clients.

Undersigned counsel has concentrated in the area of labor and employment law for the past four (4) years and eight months. Undersigned counsel is admitted to practice law in Florida, Massachusetts, and Washington, D.C., as well as federal courts in Florida (the Northern and Southern Districts) and the Eleventh Circuit. He has tried several FLSA and civil rights cases to verdict (both for the defense and the plaintiff side), and has been successful in trials in a variety of actions. In addition to trying cases, undersigned counsel participates in many depositions (both taking and defending), appeals, client interviews, and all other areas of active litigation.

---

1.     awards in similar cases.

The current hourly rate that he charges private defendants in employment cases is $275.00, and he currently has several cases in which that amount is being charged.

Undersigned counsel currently has approximately 125 published Westlaw opinions in which he was the lead counsel, and many of these are cases published in the federal reporters involving dispositive motions. *See, e.g., Murray v. Playmaker Servs., L.L.C.*, -- F. Supp. 2d --, 2007 WL 2775133, *1 (S.D. Fla. 2007) (granting summary judgment in favor of his defense clients); *Powell v. Carey Int'l, Inc.*, 483 F. Supp. 2d 1168 (S.D. Fla. 2007) (granting summary judgment in favor of his plaintiff clients as to motor carrier and taxicab exemptions); *Rossi v. Associated Limousine Serv., Inc.*, 438 F. Supp. 2d 1354 (S.D. Fla. 2006) (granting summary judgment in favor of his plaintiff clients on the motor carrier exemption, taxicab exemption, and independent contractor defense); *Cartun v. Carey Int'l, Inc.*, Case No. 04-21074-CIV-UNGARO-BENAGES (Dec. 10, 2004) (granting summary judgment in favor of his plaintiff client as to motor carrier exemption); *Garcia v. Carey Int'l, Inc.*, Case No. 03-22963-CIV-UNGARO-BENAGES (Dec. 10, 2004) (granting same); *Lieberman v. Corporate Connection Lines, Inc.*, 2005 WL 5501491, *2 (S.D. Fla. 2005) (holding that the motor carrier exemption does not apply to limousine drivers in South Florida); *Powell v. Carey Int'l, Inc.*, 490 F. Supp. 2d 1202, 1209-1212 (S.D. Fla. 2006) (denying defendants' motion for summary judgment as to the motor carrier and taxicab exemptions, in a case in which he represented the plaintiffs); *Harley v. The Health Ctr. of Coconut Creek, Inc.*, 487 F. Supp. 2d 1344 (S.D. Fla. 2007) (denying defendant's motion for summary judgment in FMLA retaliation case); *Rozenblum v. Ocean Beach Properties*, 436 F. Supp. 2d 1351 (S.D. Fla. 2006) (granting summary judgment in his defendant client's favor in a FLSA overtime case); *Lane v. Capital Acquisitions and Management Co.*, 2007 WL 676019 (S.D. Fla. 2007) (denying defendant's motion for summary judgment in his plaintiff client's case); *Spencer v. Regional Acceptance Corp.*, 2006 WL 4590707 (S.D. Fla. 2006) (denying summary judgment on numerous-count complaint in FLSA, retaliation, and race discrimination case); *Ponce v. Cingular Wireless, L.L.C.*, 2005 WL 5454213 (S.D. Fla. 2005) (denying summary judgment in ethnic—Hispanic—discrimination case for his plaintiff client); *Mohamed v. Publix Super Markets, Inc.*, 2004 WL 5320631 (S.D. Fla. 2004) (denying summary judgment in ethnic discrimination case—Muslim—for his plaintiff client); *Gutescu v. Carey Int'l, Inc., et al.*, 2004 WL 5333762 (S.D. Fla. 2004) (denying summary judgment for gender discrimination and retaliation claims for his plaintiff client); *Gutescu v. Carey Int'l, Inc., et al.*, 2004 WL 5333763 (S.D. Fla. 2004) (denying defendants'

motion for summary judgment for his plaintiff client's FLSA claims and extension of the statute of limitations); *Lamour v. Applied Card Sys., Inc.*, 2003 WL 2553716 (S.D. Fla. 2003) (denying summary judgment to defendant in his plaintiff client's sexual harassment and retaliation case); and *Fields v. Laboratory Corp. of Am.*, 2003 WL 25544257 (S.D. Fla. 2003) (denying defendant's motion for summary judgment in pregnancy discrimination case). *See also Sweat v. Town of Davie*, Case No. 04-10003 (Broward Cty Cir. Ct., July, 2007) (granting summary judgment in favor of defense client on retaliation claim—not yet published).

Further, as defense counsel, undersigned counsel has persuaded numerous courts to grant motions to dismiss, dismissing his clients from the case. *Casseus v. R & J of South Florida, Inc.*, 2007 WL 2376242 (S.D. Fla. 2007) (dismissing case for FLSA defense client because of improper joinder); *Brooks v. Jenne*, 2005 WL 5432453 (S.D. Fla. 2005) (dismissing defense client in § 1983 case); *Brooks v. Jenne*, 2005 WL 5488060 (S.D. Fla. 2005) (dismissing defense client in § 1983 case); *Tropical Aviation v. Broward County*, Case No. 04-60416 (Aug. 10, 2005) (dismissing case in docket entry 50); *Troxell v. C S C Enterprises, Inc.*, Case No. 04-21312 (S.D. Fla. Oct. 24, 2005) (dismissing case and sanctioning plaintiff's counsel in docket entry 33); *Smith v. Jenne*, 2004 WL 5375369 (S.D. Fla. 2004) (dismissing race and gender discrimination case), *Sweat v. Town of Davie*, 2004 WL 5354051 (Broward Cty. Cir. Ct. 2004) (dismissing sexual harassment claim).

Moreover, undersigned counsel has obtained stays and has compelled cases to arbitration. *See, e.g., Joseph v. Nanak's Landscaping, Inc.*, 2007 WL 1238591 (S.D. Fla. 2007) (granting motion for stay and to compel to arbitration); and *Francisque v. Nanak's Landscaping, Inc.*, 2005 WL 5419062 (S.D. Fla. 2005).

Moreover, another important concept to the determination of an attorney's worth is an assessment of the attorney's skill. *Johnson*, 488 F.2d at 718. This criterion is addressed to the trial judge's assessment of the attorney based on his observation of "the attorney's work product, his preparation, and general ability before the court." *Id.* In making this assessment, the district court is to apply its expertise gained from the judge's career both as a lawyer and as a judge. *Id.* This criterion asks, initially, whether plaintiff's counsel was competent and experienced to do the job assigned, and thereby determining whether he or she is deserving of the going commercial rate for lawyers engaged in litigation in federal court.

As it is for the jury to remember what the testimony presented was, it is for the district court to remember the performance of counsel. As stated by the Eleventh Circuit:

Throughout, and particularly if litigation is begun, the word 'skill' incorporates the notions of organization and efficiency. An attorney of great skill organizes his thoughts, his work, and his presentation in a logical and orderly way without lost motion or false starts so that each move builds upon the last to the achievement of the goal. Organization means that discovery devices and motions are thought out and not utilized in a random or erratic way or for the mere purpose of going through established routines. Efficiency means doing well just what ought to be done and doing it in a minimum of time.

The underpinning for these facts of legal skill is knowledge, knowledge of trial practice and knowledge of substantive law. A lawyer who has to educate himself generally in either or both of these two areas may ultimately be as effective as a specialist, but he has no right to expect to be reimbursed at the same rate as a lawyer who begins his preparation with the finer points raised by the particular case.

The final attribute of legal skill is perhaps the one the general public thinks of first – persuasiveness. Some clients prevail only because of the compelling merit of their case and in spite of their attorney's efforts to communicate a position. In other cases, usually close ones, the better advocate may actually sway the outcome on occasions. In the usual case, both the merits and the advocacy control the outcome. The measure of good advocacy is that the client's best positions are advanced clearly, crisply and compellingly.

*Norman*, 836 F.2d at 1300-01.

Specialization, and the attendant economies of time that result, is a ground for awarding an hourly rate at the high end of the spectrum. For, as the court observed in *White v. Alabama*, 1996 Lexis 9347, *1 (N.D. Ala. 1996), a voting rights case in which the court found that the plaintiff's attorney's "expertise enabled them to prosecute th[e] case very efficiently,":

attorneys with less knowledge and experience would have taken many more hours to pursue this litigation. Therefore, Agricola's and Jordan's 'efficiency justifies an hourly rate at the high end of the customary range.' *Gay Lesbian Bisexual Alliance v. Sessions*, [843 F. Supp. 1424 (M.D. Ala. 1996)]; *see also Coleman v. Cannon Oil Co.*, 911 F. Supp. 510, 515 (M.D. Ala. 1995) ("A lawyer already skilled in the area could demand a higher rate because he or she would be more knowledgeable and could work more efficiently"); *Dillard v. City of Elba*, 863 F. Supp. 1550, 1553 (M.D. Ala. 1993) (experienced attorneys prosecuted case in fewer hours than inexperienced attorneys would have); *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 744 F. Supp. 1061, 1071 (M.D. Ala. 1988) (attorney's "inexperience should be reflected in [lower] . . . hourly rate"), *aff'd*, 891 F.2d 842 (11th Cir. 1990).

*Id.* at *14-15.

In this case, Defendants' counsel exhibited outstanding skill, which is apparent from the filings in the docket that resulted in the grant of summary judgment in his clients' favor. Defendants' counsel was up against a labor and employment attorney who has been practicing for a number of years. The Plaintiff vigorously prosecuted this cause of action on numerous grounds. The Plaintiff deposed most of the Defendants managers.

### 2. Assessing a Reasonable Number of Hours

While the prevailing party need only submit evidence indicating what the hours worked were, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), in this case the hours that were actually worked and billed have been submitted. The Supreme Court has stated the following with respect to the assessment of whether the number of hours submitted is reasonable:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

*Id.* at 435. While this language applies to plaintiffs, it should also apply to defendants, and in this case, the Defendants were successful against the Plaintiff with respect to all causes of action brought by the Plaintiff, thus, all of defense counsel's fees should be recoverable. *Id.* at 434-35. The Eleventh Circuit has agreed with this rationale. *Norman*, 836 F.2d at 1302.

The attached documentation in the form of defense counsel's time records (Exhibit 3) should be more than enough evidence as to defense counsel's reasonable hours worked. The hours total 161.9 (as of October 29, 2007). Defense counsel submits that the number of hours is reasonable, particularly given the causes of action asserted and the litigation positions taken by the Plaintiff. The Plaintiffs' main theory of this case was that the Defendants violated the Fair Labor Standards Act for overtime, minimum wage, and also breached a contract that the parties had entered into, plus there were issues as to whether the contract was modified, and therefore, pursuant to *Hensley* and *Norman*, defense counsel is entitled to their entire fee, as they prevailed on all of these causes of action. Additionally, the Court should know that the travel time to and from the depositions was billed for, and undersigned counsel believes that it is normal practice in this judicial circuit to bill for such hours, and undersigned counsel's firm has billed fee-paying clients for such time for the past ten (10) years.

Attached hereto as Exhibit 2 is the Affidavit of Gloria North, which sets forth an expert opinion that the rates charged, the hours worked, and the lodestar are all reasonable under the circumstances of this case.

Finally, it is well settled that expended litigating attorneys fees is fully compensable. *Thompson v. Pharmacy Corp. of Am., Inc.*, 334 F.3d 1242, 1244-46 (11th Cir. 2003) (reversing district court's decision to deduct all attorney time attributed to efforts to recover attorneys fees as an abuse of discretion).

### 3. **The Lodestar**

The lodestar for all attorneys in this case (reasonable hourly rate) x (reasonable hours billed) is:

$$\$250.00/hr \times 161.9/hrs = \$40,475.00.$$

### 4. **Adjusting the Lodestar**

Having determined the lodestar by multiplying the reasonable hourly rate by a reasonable number of hours worked, the Court may then adjust the lodestar, as discussed above, upward or downward, to reflect a number of different factors, including, 1) the time and labor required; 2) the novelty and difficulty of the questions; 3) the skill required to perform the legal services properly; 4) the preclusion of other employment by the attorney due to the acceptance of this case; 5) time limitations by the client or the circumstances; and 6) the amount involved and the results obtained. *Manriquez v. Manuel Diaz Farms, Inc.*, 2002 WL 1050331, * 10 (S. D. Fla. 2002) (citing *Kay*, 176 F.3d at 1327); *Norman*, 836 F.2d at 1302.   However, in this case, the Defendants do seek an increase in the lodestar.

### 5. **Interest on the Fees**

Defendants are entitled to interest on the attorneys fees and costs ultimately awarded in this matter from September 25, 2007, the date of the entry of this Court's Final Order. "[I]nterest on a fee award . . . runs from the date of the judgment establishing the right to an award, not the date of the judgment establishing its quantum." *Jenkins by Agyei v. Missouri*, 931 F.2d 1273 (8th Cir. 1991); *see also Copper Liquor, Inc. v. Adolph Coors Co.*, 701 F.2d 542 (5th Cir. 1983) (interest awarded on fees from date of original judgment); and *Finkelstein v. Bergua*, 804 F. Supp. 1235, 1240 (N.D. Cal. 1992).   Accordingly, Defendants request that this Court order that Defendants are entitled to interest accrued on Defendants' attorneys fees since September 25, 2007, the date of this Court Final Order.

## **CONCLUSION**

Based on the foregoing, Defendants and their counsel respectfully request that this Honorable Court award them $40,475.00 in attorney's fees.

## <u>CERTIFICATE OF CONFERRAL</u>

Undersigned counsel has conferred with counsel for the Defendants, pursuant to Local Rule 7.1.A.3., but was not successful in resolving this Motion before it was filed.  Undersigned wrote a letter to Ms. Cathleen Scott, Plaintiff's counsel.  Ms. Scott did not respond.  Undersigned counsel certifies, by executing this Motion, that he has fully reviewed the supporting time records and data underlying the incurred attorney work, and that the fees sought in this case are reasonable under the circumstances.

Respectfully submitted,

Glasser, Boreth & Kleppin
8751 W. Broward Blvd., Suite 105
Plantation, Florida 33324
Tel.  (954) 424-1933
Fax. (954) 474-7405

By: __s/Chris Kleppin_____
       Chris Kleppin
       Fla. Bar No. 625485

## **VERIFICATION**

I, Chris Kleppin, Esq., as attorney for Plaintiffs, having first been duly sworn in accordance with law, do hereby depose and state that I have read the foregoing Motion for Attorney's Fees, and that the attorney's fees sought to be awarded against the Plaintiff and Cathleen Scott, P.A. herein, with further supporting documentation attached hereto, are true and correct to the best of my knowledge and information.  I further assert that I have fully reviewed the time records and supporting data and that this Motion is well grounded in law and fact, and is justified.

_____
CHRIS KLEPPIN

STATE OF FLORIDA

COUNTY OF _BROWARD_

BEFORE ME, the undersigned authority, personally appeared _CHRIS KLEPPIN_, personally known to me or who produced _N/A_ as identification, and who, after being duly sworn, stated under oath that he/she signed the foregoing Motion for Attorney's Fees on behalf of _DEFENDANTS_, and they are true and correct to the best of his/her knowledge and information.

SWORN TO AND SUBSCRIBED before me, this _19th_ day of _November_ 2007.

_____
NOTARY PUBLIC

My Commission Expires:

Dated this _19th_ day of November, 2007.

Harry O. Boreth
Commission #DD225281
Expires: Aug 02, 2007
Bonded Thru
Atlantic Bonding Co., Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 19, 2007, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record (Cathleen Scott, Esq., law offices of Cathleen Scott, P.A., Jupiter Gardens, 250 South Central Boulevard, Suite 104, Jupiter, Florida 33458) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

Glasser, Boreth & Kleppin
Attorneys for Plaintiff
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405
E-mail: Glabor@aol.com


By___s/Chris Kleppin_____
    Chris Kleppin
    Fla. Bar No. 625485